IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **OREGON NATURAL DESERT ASS'N**, | Civil Case No. 3:08-CV-01271-KI |
| Plaintiff, | OPINION AND ORDER ON RENEWED MOTIONS FOR SUMMARY JUDGMENT |
| v. | |
| **BUREAU OF LAND MANAGEMENT, KENNY McDANIEL,** Burns District Manager, BLM, **JOAN SUTHER,** Field Manager, Andrews Resource Area, BLM, and **INTERIOR BOARD OF LAND APPEALS,** | |
| Defendants. | |

Peter M. Lacy ("Mac")
Oregon Natural Desert Association
917 SW Oak Street, Suite 419
Portland, OR 97205

Attorney for Plaintiff

Page 1 - OPINION AND ORDER ON RENEWED MOTIONS FOR SUMMARY JUDGMENT

Billy Williams
Acting United States Attorney
District of Oregon
Stephen J. Odell
Assistant U.S. Attorney
U.S. Attorney's Office
1000 SW Third Ave., Suite 600
Portland, OR 97204-2902

Bradley Grenham
Special Assistant U.S. Attorney
Office of the Regional Solicitor
805 SW Broadway, Suite 600
Portland, OR 97205

      Attorneys for Defendants

KING, Judge:

The Oregon Natural Desert Association ("ONDA") challenged the BLM's plan to control

juniper expansion on Steens Mountain (the "Juniper Treatment Project"), as set forth in the

BLM's North Steens Ecosystem Restoration Project Environmental Impact Statement ("the EIS")

and Record of Decision ("ROD").  ONDA's lawsuit alleged violations of the National

Environmental Policy Act of 1969 ("NEPA"), 42 U.S.C. §§ 4321-61, the Federal Land Policy

and Management Act of 1976 ("FLPMA"), 43 U.S.C. §§ 1701-87, and the Steens Mountain

Cooperative Management and Protection Act of 2000 ("Steens Act"), 16 U.S.C. §§ 460nnn-

460nnn-122.  I granted in part and denied in part the parties' cross-motions for summary

judgment; I remanded a limited issue to the Interior Board of Land Appeals ("IBLA") about

whether the Juniper Treatment Project impermissibly allows off-road motorized use in

Wilderness Study Areas (sometimes referred to as "WSAs") in violation of the Steens Act.  Nov.

15, 2011 Opinion and Order [95].

Page 2 - OPINION AND ORDER ON RENEWED MOTIONS FOR SUMMARY JUDGMENT

After a decision on remand by the IBLA, concluding no violation of the Steens Act, ONDA moved to reopen this litigation, filed a Second Supplemental Complaint, and both parties filed cross-motions for summary judgment.

## BACKGROUND

The BLM issued its final EIS and ROD on the Juniper Treatment Project in September 2007. The Project's purpose is to "reduce juniper-related fuels and restore various plant communities through restoration of habitat" within an approximately 336,000-acre area in the Steens Mountain Cooperative Management and Protection Area ("CMPA")[1] and Andrews Management Unit of the Andrews Resource Area. AR 585, 583.[2] The Project Area includes all or portions of several Wilderness Study Areas, with 79,607 such acres within Project units. AR 660.

According to the BLM, juniper, although native, has expanded its range and density and dominates other vegetation such as mountain big sagebrush, quaking aspen, shrubs and grasses and puts at risk mountain mahogany and old-growth juniper. The BLM believes the juniper expansion is due in large part to fire suppression, historic grazing practices, and climatic changes.

The planned techniques, or treatments, of juniper removal include: prescribed fires (including broadcast burning), cutting down and girdling trees, fencing, seeding, and planting. The project is not specific as to where treatments will occur or for how long the project will continue, but the BLM anticipates a decades-long process focusing on the "juniper belt" existing

---

[1]The CMPA was established by the Steens Act and is comprised of both public and private land covering most of Steens Mountain.

[2] I cite to the administrative record [29] as AR, the supplemental administrative record [53] as SAR, and the remand administrative record [107] as RAR.

Page 3 - OPINION AND ORDER ON RENEWED MOTIONS FOR SUMMARY JUDGMENT

roughly between 4,500 feet and 7,200 feet in elevation in the Project Area. AR 583. The BLM describes the project as a "landscape-level project" that will be implemented through an "adaptive management" approach, which requires identifying objectives, monitoring to evaluate success in meeting outcomes, and changing the approach if success is not achieved. Id. To execute the project, the BLM anticipates needing to grade, gravel, and install culverts or rock crossings to move machinery to and from project units, and improve (then reclaim) closed roads to serve as fire lines. Finally, and central to the remaining issue in this litigation, off-road vehicles may be used to treat remote areas including in Wilderness Study Areas.

In its comments on the draft EIS, ONDA expressed concern with the BLM's proposed methods of juniper removal and the size of the project. While ONDA thought "some degree" of juniper removal was warranted, it worried about impacts to sage-grouse and sagebrush habitat as well as the effect on wilderness and roadless areas. AR 3136-40. ONDA appealed the BLM's final decision, and the IBLA affirmed the BLM's decision in June 2008.

ONDA filed its complaint in October 2008, but the Court granted repeated extensions of the case deadlines to aid the parties' settlement negotiations. Ultimately, the parties could not reach agreement and ONDA filed a Motion for a Temporary Restraining Order/Preliminary Injunction, along with a Motion for Summary Judgment. The parties stipulated to a stay of the TRO/Preliminary Injunction motion when the BLM agreed not to engage in project activities until at least August 31, 2011. It also promised not to undertake any further project-related tasks on or after September 1, 2011 unless it first notified ONDA and the Court two weeks in advance.

In November 2011, I granted in part and denied in part the parties' cross-motions for summary judgment. As relevant to the issue at hand, I remanded to the IBLA ONDA's argument

Page 4 - OPINION AND ORDER ON RENEWED MOTIONS FOR SUMMARY JUDGMENT

that the off-road motorized use in Wilderness Study Areas contemplated by the Juniper

Treatment Project is a violation of the Steens Act. The judgment I entered on December 15,

2011, provided limited re-opener clauses to deal with the environmental analysis required by the

BLM and this limited remanded issue. I ordered the BLM not to use or authorize use of vehicles

off-road in Wilderness Study Areas until the IBLA issued a final determination on remand.

On November 25, 2014, the IBLA approved the BLM's decision to allow off-road

motorized use in Wilderness Study Areas. The parties conferred. ONDA announced its

intention to reopen this litigation and renew its summary judgment motion. The BLM agreed to

follow the judgment's proscription and limit use of vehicles off-road in Wilderness Study Areas,

with the exception of 160 acres in or within the immediate vicinity of the proposed units within

the Blitzen River Wilderness Study Area.

The BLM reports considerable support for the larger Juniper Treatment Project. The

Steens Mountain Advisory Council, which is an advisory board to the BLM on managing the

CMPA, unanimously recommended the project. Oregon Department of Fish and Wildlife,

Oregon Department of Environmental Quality, FWS, Harney County Soil and Water

Conservation District, the Burns Paiute Tribe, and the Eastern Oregon Agricultural Research

Center are cooperating agencies on the project. Backcountry Hunters and Anglers, Trout

Unlimited, Sierra Club, Izaak Walton League, DEQ and FWS have all expressed support for the

project.

## LEGAL STANDARDS

ONDA's action arises under the Administrative Procedure Act ("APA"), 5 U.S.C. §§

701-706. The court has a limited scope of review under the APA; the court may overturn an

agency action–or, in this case, the IBLA's decision–only if the action was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A); Marsh v. Or. Natural Res. Council, 490 U.S. 360, 377 (1989); Geo-Energy Partners-1983 Ltd. v. Salazar, 613 F.3d 946, 955 (9th Cir. 2010) (applying same standard to IBLA decision).

In determining whether an agency decision is arbitrary and capricious, courts "consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment."  Marsh, 490 U.S. at 378.

> An agency decision is arbitrary and capricious if "the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise."

Nw. Envtl. Def. Ctr. v. Bonneville Power Admin., 477 F.3d 668, 687 (9th Cir. 2007) (quoting Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983)).  The agency must "articulate[] a rational connection between the facts and the choice made."  Geo-Energy Partners-1983 Ltd., 613 F.3d at 955.  Review under this standard is narrow, and the court may not substitute its judgment for the judgment of the agency.  Id.; Nw. Envtl. Def. Ctr., 477 F.3d at 687.

**DISCUSSION**

I.    Steens Act Prohibition on Off-Road Vehicle Use and its Exceptions

The only remaining issue is whether the BLM's Juniper Treatment Project violates the Steens Act by allowing off-road vehicle use in Wilderness Study Areas.  Relying on an exception to the statutory prohibition on off-road vehicle use, the BLM contends it needs to use motorized equipment to pile juniper for burning.  The BLM intends to use a tracked or wheeled vehicle,

Page 6 - OPINION AND ORDER ON RENEWED MOTIONS FOR SUMMARY JUDGMENT

such as an excavator, with an articulating arm capable of grasping, lifting and placing trees in a pile. RAR 23. The BLM will not use the machinery when the soil is wet or during times of high fire hazard. RAR 24-25.

Because the parties present an issue of statutory interpretation in their cross-motions for summary judgment, I must examine the statutory language to determine whether it has a plain and unambiguous meaning. Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842-43 (1984). If it does, the agency must comply with the language of the statute. If the statute is silent or ambiguous, however, I must move on to the second step and identify the level of deference owed to the agency. In that second step, I apply deference to the agency's interpretation if "it appears that Congress delegated authority to the agency generally to make rules carrying the force of law, and that the agency interpretation claiming deference was promulgated in the exercise of that authority." United States v. Mead Corp., 533 U.S. 218, 226-27 (2001). When the delegation exists, the court must give the agency's interpretation controlling weight so long as it is "permissible" or "reasonable." Chevron, 467 U.S. at 843.

The relevant Steens Act provision reads as follows:

**(b) Prohibition on off-road motorized travel**

    **(1) Prohibition**

    The use of motorized or mechanized vehicles on Federal lands included in the [CMPA]--

        **(A)** is prohibited off road; and

        **(B)** is limited to such roads and trails as may be designated for their use as part of the management plan.

    **(2) Exceptions**

Paragraph (1) does not prohibit the use of motorized or mechanized vehicles on Federal lands included in the [CMPA] if the Secretary determines that such use –

**(A)** is needed for **administrative purposes** or to respond to an emergency; or

**(B)** is appropriate for the construction or maintenance of agricultural facilities, fish and wildlife management, or **ecological restoration** projects, **except** in areas designated as wilderness or [**Wilderness Study Areas**].

16 U.S.C. § 460nnn-22 (emphasis added).

ONDA argues the language is clear. For ecological restoration projects such as the Juniper Treatment Project, off-road vehicle use is prohibited in Wilderness Study Areas pursuant to the "ecological restoration" exception in subsection (B).

The BLM instead found in its ROD that the "administrative purposes" exception in subsection (A) permits its proposed off-road travel in Wilderness Study Areas. Specifically,

Active management of juniper by BLM, as emphasized in Section 113(c) of the Steens Act, requires administrative use of motorized vehicles for proper project implementation and for fire fighter safety. Off-road travel may be needed for administrative purposes for this project, and is allowed under Section 112(b)(2)(A) of the Steens Act.

AR 392.

I agree with ONDA that the statute is unambiguous. The relevant Steens Act provision begins with the general premise that off-road vehicle use is prohibited. It is only permitted if the Secretary determines that such use is "needed for administrative purposes" or if the Secretary determines such use is "appropriate for . . . ecological restoration projects." The latter "ecological restoration" exception contains an exception of its own: off-road driving for ecological restoration projects is permitted *except* in wilderness and Wilderness Study Areas.

The BLM cannot rely on the "administrative purposes" exception in subsection (A) when subsection (B) specifically precludes off-road motorized vehicles in Wilderness Study Areas for the purpose of implementing an ecological restoration project.

The BLM does not dispute that the Juniper Treatment Project *is* an ecological restoration project. Nevertheless, it contends subsection (A) allows BLM's off-road access in Wilderness Study Areas to administer its statutory mandate of managing juniper, while subsection (B) limits parties such as cooperating private landowners needing access on or over public lands.

If I were to accept the BLM's interpretation, the first exception for "administrative purposes" would render the second limitation on off-road travel in Wilderness Study Areas a nullity. So long as the Secretary found the proposed action to be "needed for administrative purposes" the agency could avoid the very specific prohibition on off-road travel in Wilderness Study Areas present in subsection (B). The BLM's interpretation places no limit on what falls in the category of "administrative." BLM–as the agency charged with implementing Congress' enactments–could call any activity "administrative" since its job is to "administer" the laws. See Administration Definition, http: //dictionary.cambridge.org/us/dictionary/american-english/administration (last visited Aug. 7, 2015) ("administration" means "the management or control of an organization"); Administrative Definition, http://www.merriam-webster.com/dictinary/administrative (last visited Aug. 7, 2015) ("administrative" means "of or relating to the management of a company, school, or other organization"); Administration Definition, http://dictionary.reference.com/browse/administration (last visited Aug. 7, 2015) ("administration" means "the management of any office, business, or organization; direction").

I must avoid reading the statute in a way that would render language of the statute superfluous.  TRW Inc. v. Andrews, 534 U.S. 19, 31 (2001) ("a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant"); Bennett v. Spear, 520 U.S. 154, 173 (1997) (it is the "cardinal principle of statutory construction . . . to give effect, if possible, to every clause and word of a statute . . . rather than to emasculate an entire section").  Further, the specific should control the general. Morales v. Trans World Airlines, Inc., 504 U.S. 374, 384 (1992); Guidry v. Sheet Metal Workers Nat'l Pension Fund, 493 U.S. 365, 375-76 (1990).

Similarly, the BLM's argument that the "ecological restoration" exception is applicable to private parties only is not supported by the language of the statute nor the agency's practice.  The plain language of subsections (A) and (B) applies to off-road driving by all users, whether BLM personnel or private parties.  Indeed, on many occasions a task delegated to a private individual retains its characterization as an administrative use.  See ONDA Reply 3-4.  While the BLM points to two cooperative cross-boundary management agreements as evidence that subsection (B) applies to allow private parties access to implement ecological restoration, the agreements do not reference that authority and, more importantly, could just as easily be evidence that private parties are permitted to drive off-road to implement "administrative purposes."  AR 3697 (purpose of agreement is to implement various provisions of the Steens Act, including cooperative management); AR 3710 (purpose of agreement is to cooperatively manage juniper expansion, relying in part on Section 113(c) as authority); see also AR 85-86 (describing off-road travel for "[a]dministration of authorized uses (grazing permits, landowner access, etc.)" as well

as "BLM administration[,]" both of which are separate from "[c]onstruction and maintenance of facilities or restoration projects outside Wilderness and WSAs").

The BLM argues against an interpretation that would limit its ability to carry out the explicit statutory direction to manage juniper on a landscape level–its "administrative purpose." Indeed, the Steens Act specifically provides:

> JUNIPER MANAGEMENT.–The Secretary shall emphasize the restoration of the historic fire regime in the [CMPA] and the resulting native vegetation communities through active management of Western Juniper on a landscape level. Management measures shall include the use of natural and prescribed burning.

16 U.S.C. § 460nnn-23(c).  According to the BLM, the primary purpose of the mandate is to address juniper expansion in the CMPA through active management on a landscape level and interpreting the "administrative purposes" exception to prohibit the proposed off-way vehicle use would burden BLM's ability to carry out this mandate.

As ONDA points out, the statute takes as its starting position a prohibition on off-road motorized travel.  The fact that the statute mandates that the BLM "shall" manage juniper does not mean the BLM must drive in Wilderness Study Areas to do so.  In planning the Juniper Treatment Project, the BLM identified other methods of implementing its mandate that would not require vehicle use.  AR 607 (backpack flame throwers, terra torches, natural wildfire).  Thus, even interpreting the language in the context of the statute as a whole, as the BLM urges me to do pursuant to King v. Burwell, 135 S. Ct. 2480, 2492 (2015), does not persuade me that BLM's interpretation is correct.  The BLM's interpretation would give trumping power to the purpose of the project over the explicit statutory prohibition on off-road driving in Wilderness Study Areas.

Page 11 - OPINION AND ORDER ON RENEWED MOTIONS FOR SUMMARY JUDGMENT

The BLM expresses concern about the difficulty and expense of implementing its statutory mandate on a landscape level without the ability to use mechanized vehicles off-road.  I am sympathetic.  Nevertheless, I agree with ONDA; considerations of cost and challenge are not statutory factors.  Off-road travel is simply prohibited in Wilderness Study Areas for the purpose of projects like the Juniper Treatment Project.

The BLM also highlights the difference in language Congress used between off-road travel deemed by the Secretary to be "needed" and off-road travel deemed by the Secretary to be "appropriate."  According to the BLM, then, the plain meaning of the statute is that subsection (A) governs activities that are necessary, while subsection (B) governs activities that are appropriate but not strictly necessary.  Subsection (A)'s more restrictive limitation to "needed" tasks means off-road use in Wilderness Study Areas to accomplish the statutory mandate of controlling juniper is allowed.

However, as ONDA points out, "needed" and "appropriate" are tied to their subjects:  off-road driving for administrative purposes or emergency response, and off-road driving for construction or maintenance of agricultural facilities, fish and wildlife management, or ecological restoration projects.  Congress used "appropriate" for the latter because those are projects for which the BLM must use its discretion.  The one apparent limitation is that motorized use in Wilderness Study Areas may only take place on existing routes.  Notably, the CMPA Resource Management Plan does not address off-road travel by reference to whether the use is "needed" or "appropriate."  Nor does it suggest that off-road driving for the purpose of  "[c]onstruction and maintenance of facilities or restoration projects outside Wilderness and WSAs" is limited to private parties.  AR 4231.

Page 12 - OPINION AND ORDER ON RENEWED MOTIONS FOR SUMMARY JUDGMENT

Finally, the BLM argues I am bound by my previous conclusion finding driving in Wilderness Study Areas to be permissible under FLPMA. Nov. 15, 2011 Opinion and Order 49 (the project fell within the broad authorization of driving off-road for "official purposes . . . when necessary . . . for protection of the lands and their resources" ). To the contrary, the Steens Act provides an additional layer of protection to Wilderness Study Areas. If Congress intended off-road driving to be controlled by FLPMA alone, it would have left the Steens Act with only the requirement that management of Wilderness Study Areas "shall continue" to be managed pursuant to existing law and policy. 16 U.S.C. § 460nnn-64(b). Instead, Congress added the limitation regarding off-road driving for specified kinds of projects.

For all these reasons, driving off-road in Wilderness Study Areas to implement the Juniper Treatment Project is prohibited by the Steens Act. Therefore, defendants' decision to allow such use was arbitrary, capricious, an abuse of discretion and otherwise not in accordance with the Steens Act. Similarly, the IBLA's November 25, 2014 decision approving off-road vehicle use in Wilderness Study Areas within the Steens Mountain CMPA is unlawful.

II.    Remedy

The parties dispute the proper remedy. ONDA seeks partial vacatur of the ROD with respect to its allowance of off-road vehicle use in Wilderness Study Areas. The law is in ONDA's favor. See 5 U.S.C. § 706(2)(A) (court "shall" set aside arbitrary and capricious agency decision); Se. Alaska Conservation Council v. U.S. Army Corps of Eng'rs, 486 F.3d 638, 654 (9th Cir. 2007) ("Under the APA, the normal remedy for an unlawful agency action is to set aside the action. In other words, a court should vacate the agency's action and remand to the agency to act in compliance with its statutory obligations.") (internal quotation marks and citation omitted),

rev'd on other grounds sub nom. Coeur Alaska v. Se. Alaska Conserv. Council, 557 U.S. 261

(2009). It is rare for a court in the Ninth Circuit to deny vacatur. Humane Soc'y of the U.S. v.

Locke, 626 F.3d 1040, 1053 n.7 (9th Cir. 2010).

For purposes of judicial efficiency, the parties are directed to confer and attempt to reach

a resolution. If they cannot agree, the BLM may submit a memorandum no longer than five

pages in support of the remedy it seeks by September 25, 2015. See California Communities

Against Toxics v. U.S. E.P.A., 688 F.3d 989, 992 (9th Cir. 2012) (discussing factors to consider

in vacating an agency's rule). The BLM may submit materials outside the administrative record

relevant only to the "disruptive consequences of an interim change that may itself be changed."

Id. ONDA may file a five-page response by October 9, 2015; it too may submit responsive

materials from outside the administrative record on the limited issue relating to the consequences

of vacatur.

## CONCLUSION

For the foregoing reasons, I grant ONDA's Motion for Summary Judgment [113] and

deny defendants' Motion for Summary Judgment [114]. Additional briefing on the appropriate

remedy is ordered as set forth above.

IT IS SO ORDERED.

DATED this _____19th_____ day of August, 2015.

           /s/ Garr M. King_____
          Garr M. King
          United States District Judge